James E. CLOUD, Petitioner

v.

Gary BECKSTROM, Warden, Respondent.

Civil Action No. 6:07–139–KKC.

United States District Court, E.D. Kentucky, Southern Division.

April 18, 2008.

**34.** *See Carroll v. Timmers Chevrolet, Inc.,* 592 S.W.2d 922, 925 (Tex.1979).

Elizabeth Snow Hughes, Gess, Mattingly & Atchison, P.S.C., Lexington, KY, for Petitioner.

Courtney Jones Hightower, Office of Attorney General, Frankfort, KY, for Respondent.

## OPINION AND ORDER

KAREN K. CALDWELL, District Judge.

This matter is before the Court on Petitioner James E. Cloud's Petition for Writ of Habeas Corpus [R. 1], the Magistrate Judge's Recommended Disposition recommending that the Court deny with prejudice the Petition for Writ of Habeas Corpus and decline to issue a Certificate of Appealability [R. 31], and Petitioner's Objections to the Recommended Disposition [R. 33]. For the reasons given below, the Court **OVERRULES** Petitioner's Objections to the Recommended Disposition, **ADOPTS** the Recommended Disposition as the Opinion of the Court, and **DENIES** the Petition for a Writ of Habeas Corpus.

## I. Overview

Petitioner Cloud was convicted of first degree robbery in Bell Circuit Court of Kentucky after pleading guilty pursuant to a plea agreement. Cloud was sentenced to twenty years in prison in accordance with the prosecutor's recommended sentence. Soon afterwards, Cloud challenged his conviction on the grounds of ineffective assistance of counsel. He alleges that his attorney gave him incorrect information about his parole eligibility and failed to reasonably attempt to communicate an offer for a more favorable plea agreement. Cloud asserts that but for this ineffective assistance of his counsel, he would have rejected the twenty-year plea agreement and would have instead gone to trial. The Court need not repeat or elaborate any further on the factual and procedural history surrounding Cloud's habeas corpus petition, since this is discussed in great detail in the Magistrate Judge's Recommended Disposition. As such, the Court adopts the depiction of the factual and procedural background given in the Recommended Disposition.

The Magistrate Judge concluded that the Kentucky Court of Appeals' resolution of Cloud's ineffective assistance of counsel claims was not "objectively unreasonable" under 28 U.S.C. § 2254. The Magistrate Judge determined that although Cloud's attorney had likely provided deficient representation with respect to both claims, Cloud had suffered no prejudice from this representation. As such, Cloud presented no cognizable Sixth Amendment ineffective assistance of counsel claims under the *Strickland* standard. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Magistrate Judge also recommended denying two other related claims on the grounds of procedural default and lack of prejudice, and found that Cloud is not entitled to a Certificate of Appealability. Cloud objects to this Recommended Disposition and requests that the Court issue a Certificate of Appealability should it overrule his objections.

## II. Analysis

### A. Objection 1: Parole Eligibility

The Magistrate Judge determined that Cloud suffered no prejudice from his attorney's incorrect parole advice because there was no reasonable probability that, but for the bad advice, Cloud would not have pleaded guilty and would have instead gone to trial. Cloud's main argument was that the evidence indicated that he did not personally cause any physical injury to the victim, and that his conduct therefore did not satisfy the elements of first degree robbery and he likely would not be found guilty by a jury. The Magistrate Judge determined that under Kentucky case law, specifically *Commonwealth v. Smith*, 5 S.W.3d 126 (Ky.1999), "whether Cloud 'actually participated' in the particular 'act of force or violence' that caused the victim's injuries is immaterial." Recommended Disposition, at 32. This is because, according to *Smith*, first degree robbery is a "crime capable of being divided amongst principals." *Smith*, 5 S.W.3d at 129. Since the record reveals Cloud's presence, acquiescence, and active involvement in the crime, as well as a physical injury to the victim, Cloud satisfies the elements of first degree robbery, his defense was unlikely to succeed at trial, and he was likely to have been convicted. Recommended Disposition, at 32; *see also Smith*, 5 S.W.3d at 129 ("[I]t is sufficient that he came and went with the robbers, was present when the robbery was committed, and acquiesced therein."). The Magistrate Judge thus concluded that Cloud cannot demonstrate any prejudice from his attorney's incorrect parole advice.

Cloud objects to this assessment on two grounds. First, Cloud argues that *Smith* does not require a finding that Cloud is guilty of first degree robbery because the Commonwealth still needed to prove Cloud's intent to accomplish the theft by force, and that it is not a foregone conclusion that this would have been accomplished. Objections, at 3. Second, he notes that in addition to *Smith*, the Magistrate Judge also cited to the unpublished opinion of *Johnson v. Commonwealth*, 2005 WL 2045480 (Ky.2005), a case decided after Cloud's guilty plea, in determining that Cloud need not have personally inflicted the injury on the victim to be guilty of first degree robbery. *Id.* Cloud argues that it was not proper for the Magistrate Judge to rely on an unpublished opinion rendered after Cloud entered his guilty plea. *Id.*

■ Cloud's objections here are without merit. *Smith* unquestionably stands for the proposition that one need not be the individual who actually inflicts the physical injury on the victim to be held liable as a principal actor in first degree robbery. *See Smith*, 5 S.W.3d at 129 (*"To be liable, the accused need not ... have taken any money from the victim with his own hands*, or actually participated in any other act of force or violence...."). Cloud's claim that it was only his co-participant who inflicted the injuries on the victim would therefore not affect his case. The Magistrate Judge's analysis of this supposed defense to the "causes physical injury" element of first degree robbery is correct.

■ The Court agrees with Cloud that *Smith* does not eliminate the "intent to accomplish the theft by force" element of first degree robbery. However, the record reveals ample evidence from which the Commonwealth would likely have proven that Cloud had this very intent. As the Magistrate Judge noted, the police report, the prosecutor's summary of the evidence, and the defense attorney's recollection of the crime, as Cloud related it to him, all suggest that Cloud held the victim down as the co-participant tied him up. Recommended Disposition, at 30. Cloud's signed plea agreement conceded that he "used physical force" and "caused physical injury." *See id.* Cloud stated that, "I was present, and I'm guilty for being there," State Court Record, Video 1/26/04 3:38, and that he "participated" because he "was there." Hearing, at 27. Cloud testified that he and his co-participant both pushed their way into the victim's home, causing the victim to trip and fall against the couch. *Id.* at 10. As noted by the Magistrate Judge, the police report states that Cloud "shoved" the victim "face down" and "held him down until" the co-participant bound the victim. Recommended Disposition, at 32 n. 18. Cloud's defense attorney stated that Cloud "told me that what he did is ... he leaned up over—laid on top of the old man and held him." Hearing, at 86.

Furthermore, the prosecutor described the evidence against Cloud as "the proof would be that he held [the victim] down while [the co-participant] took the phone cords ... and tied him up." Hearing, at 46. She stated that this evidence would show that Cloud initially assaulted the victim and then attempted to tie him up, *d.* at 45, that "Cloud told the victim to give him the arm or he'd tear it off," *id.*, and that "[h]e tried to force the right arm, at which time the victim said, 'Oh, God,' and Mr. Cloud replied, 'God can't help you.'" *Id.* at 45–46. The prosecutor testified that this evidence came from statements of Cloud's co-participant and the victim. *Id.* at 67. This record evidence is more than sufficient for the Commonwealth to prove, and a jury to infer, that Cloud had the requisite "intent to accomplish the theft by force." This being the case, Cloud's objection along these lines is without merit.

■ Moreover, Cloud's objection to the Magistrate Judge's citation to *Johnson v. Commonwealth* is also baseless. Even assuming that the Magistrate Judge erred in citing to *Johnson,* this error is harmless. *Johnson* received only a single reference on page thirty-one of the Magistrate Judge's opinion, while *Smith* received the entirety of the Magistrate Judge's analysis. It is obvious that the Magistrate Judge relied almost completely on *Smith* alone, and only on *Johnson* to the extent that it further interprets *Smith.* Even standing alone, without any further interpretation through *Johnson* or any other case law, *Smith* clearly supports the Magistrate Judge's conclusion that Cloud would likely have been found guilty of first degree robbery had he rejected the twenty-year plea offer and gone to trial. Cloud cannot establish any prejudice from his attorney's incorrect parole advice. This objection is without merit.

## B. Objection 2: Failure to Communicate the Faxed Plea Offer

The Magistrate Judge also recommended denying Cloud's second claim of ineffective assistance of counsel. Cloud claimed that his attorney failed to reasonably communicate a fifteen-year plea offer faxed to the attorney from the prosecutor. Although the Magistrate Judge concluded that the defense attorney likely did not reasonably attempt to communicate the plea offer, the Magistrate Judge nonetheless determined that Cloud's claim must fail because Cloud could demonstrate no prejudice. The Magistrate Judge based this conclusion on the fact that "Cloud unequivocally testified that he would have **rejected** a fifteen year prison term if the 85% parole ineligibility rule applied." Recommended Disposition, at 36. Cloud

took a factual position that completely negated his second ineffective assistance theory, reasoned the Magistrate Judge, because if Cloud would not have accepted the fifteen-year offer anyway, then his attorney's failure to communicate that offer could not have caused any harm. The Magistrate Judge thus concluded that Cloud could establish no prejudice for this second ineffective assistance claim.

Cloud objects to this. He explains that the portion of his testimony that the Magistrate Judge relied upon has been misconstrued. He attempts to clarify his testimony by explaining that if he had been given the incorrect parole advice that his attorney allegedly provided, he would have accepted the fifteen-year offer over the twenty-year offer, but if he had been given correct parole advice, he would have rejected both offers and instead proceeded to trial. Objections, at 4; *see also* Hearing, at 26–27 (Cloud: "But I would rather have went to trial. I asked to go to trial." Examining attorney: "But if you'd known that you had to do 85 percent of 15 years—" Cloud: "I would have insisted on going to trial."). Cloud asserts that this establishes the necessary prejudice for his claim to proceed.

■ The Court again disagrees with Cloud. The record reflects that Cloud had previously rejected the same fifteen-year plea offer during his pretrial conference in June 2003. Hearing, at 40–41. Cloud decided to reject it after talking with his attorney's [1] secretary, because he and the secretary apparently did not believe that fifteen years was a fair offer. *Id.* Cloud admitted that during this time, when he was contemplating whether to accept the June 2003 fifteen-year offer, he did not discuss his parole eligibility at all. *Id.* at

---

1. This attorney, who represented Cloud during his June 2003 pretrial conference, is not the individual charged with ineffective assis- tance of counsel. The latter attorney replaced the former attorney later that year.

Cloud explained during his hearing that he considered the fifteen-year offer to be unfair because he had not caused physical injury to the victim. *Id.* at 17. Cloud stated that at the time of the pretrial conference, he believed that the incorrect parole eligibility rules applied to his case, and that even if he had known about the correct parole eligibility rules, he still would have rejected the fifteen-year offer. *Id.* at 41.

This testimony plainly refutes the notion that Cloud would have accepted the later fifteen-year plea offer had his attorney conveyed it to him. Cloud's basic argument is that his incorrect understanding of his parole eligibility made the difference in whether he would have rejected or accepted the fifteen-year offer that his attorney failed to convey. However, when he had earlier received the same fifteen-year plea offer in June 2003, he *rejected* the offer *while he believed that the incorrect parole advice applied* to his case. *See id.* (Cloud: "I was thinking I was being charged under 20 percent [the incorrect parole advice]."). This is completely inconsistent with his statement that, had his attorney conveyed the later fifteen-year plea offer (the same offer that he earlier rejected), he would have instead *accepted* the offer under his belief that the incorrect parole advice applied to his case. *See* Objections, at 4. The two statements cannot be logically reconciled. Moreover, as noted, Cloud admitted that when he was deciding whether to accept or reject the June 2003 fifteen-year plea offer, he never discussed parole eligibility with his attorney or her secretary. Hearing, at 41. For one who now claims that he would have accepted the same fifteen-year offer based entirely on the parole eligibility advice given him, Cloud's failure to ever discuss parole eligibility at the time of the original fifteen-year plea offer is quite suspicious.

From all this, the Court can only conclude that whether Cloud would have accepted or rejected the later fifteen-year plea offer turned entirely on his belief that he would likely not be found guilty at trial because he did not actually inflict the requisite physical injury on the victim. He basically admitted this during his testimony. *See id.* at 17 (Cloud: "And I asked her [the attorney's secretary, during the June 2003 pretrial conference] if she felt that I was getting a fair offer with the 15 years and she said no. So I decided I wouldn't take it. *Because I knew I hadn't caused no serious physical injury to nobody.*" (emphasis added)). The Court simply cannot credit Cloud's assertion that parole eligibility would have been the crucial factor in accepting or rejecting the later fifteen-year offer when it plainly was not a factor at all in his previous rejection of the same offer. *See id.* at 41 (Examining attorney: "I think you testified if you had known that you were under an 85 percent rule [the correct parole eligibility advice], you would not have taken even the [earlier] 15 year deal, is that correct?" Cloud: "Correct."). The Magistrate Judge was correct that Cloud cannot establish prejudice from his attorney's failure to communicate the later fifteen-year plea offer. This objection is without merit.

## C. Request for Certificate of Appealability

The Magistrate Judge recommended that the Court not issue a Certificate of Appealability. He explained that Certificates of Appealability may issue where the petitioner makes a "substantial showing of the denial of a constitutional right." *See* Recommended Disposition, at 40 (citing 28 U.S.C. § 2253(c)(2)). Further, the Magistrate Judge explained that "[t]his requires a petitioner to demonstrate that 'jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Id.* (quoting *Slack v. McDaniel,*

529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)). The Magistrate Judge concluded that Cloud had not made a "substantial showing" as to any claimed denial of his rights, and that the dismissal of these claims on the merits is not debatable. *Id.* at 41. Therefore, Cloud would not be entitled to a Certificate of Appealability. *Id.*

■ In his Objections, Cloud simply states that he "respectfully requests that the Court approve a Certificate of Appealability for him." Objections, at 4. Cloud offers no argument of any kind that he has in fact made the "substantial showing" that the Magistrate Judge found lacking. Cloud is required to demonstrate this "substantial showing" if he wishes the Court to issue a Certificate of Appealability. *See Slack,* 529 U.S. at 483–84, 120 S.Ct. 1595. He clearly has not done so. In any case, the Court agrees with the Magistrate Judge's conclusions on this issue. The Court declines Cloud's request to issue him a Certificate of Appealability.

**WHEREFORE,** the Court being sufficiently advised, it is hereby **ORDERED** that:

(1) The Petitioner's Objections to the Recommended Disposition are **OVER-RULED;**

(2) The Magistrate Judge's Recommended Disposition is **ADOPTED** as the Opinion of the Court; and

(3) The Petition for a Writ of Habeas Corpus is **DENIED.**

## RECOMMENDED DISPOSITION

ROBERT E. WIER, United States Magistrate Judge.

James Elbert Cloud is a Kentucky inmate serving a twenty year sentence, under a Bell Circuit Court judgment, for first degree robbery. Cloud pled guilty to the offense in January 2004, pursuant to a plea agreement. In return for pleading guilty, the Commonwealth dismissed a second degree persistent felony offender count and recommended the twenty year prison term. Now pending is a § 2254 motion filed by Cloud seeking federal habeas relief. *See* DE # 1. Cloud's motion asserts ineffective assistance, alleging that defense counsel provided grossly inaccurate parole eligibility advice and failed to communicate a plea offer recommending a fifteen year sentence.

The District Judge referred the matter to the undersigned for a recommended disposition. Based on the nature of the claims and the status of the state court record, the Court determined that Cloud's allegations, if proven, could entitle him to federal habeas relief on either included claim under § 2254. *See Schriro v. Landrigan,* —— U.S. ——, ——, 127 S.Ct. 1933, 1940, 167 L.Ed.2d 836 (2007). The Court thus granted Cloud's motion for an evidentiary hearing, *see* DE # 9, ordered Respondent to supplement the record, and appointed counsel. *See* DE # 11, # 12, & # 18. The Court also allowed post-hearing briefing. *See* DE # 27. The matter, now submitted, is ripe for decision. *See* DE # 29 & # 30. For the reasons stated, and based on a full analysis of the record and applicable standards, the Court recommends that the District Court DENY Cloud's § 2254 petition.

## I. The Record

### A. The Offense and State Conviction

Police arrested James Cloud on September 7, 2002 for a home invasion in Middlesboro, Kentucky that occurred on September 5. *See* State trial record at 3 (hereinafter "TR"). According to the police report, the Middlesboro victim "was threatened with death several times and sustained a broken arm, bruises on both arms, and a large knot in the rear of his head." *See id.* The report indicated that Petitioner inflicted the injuries. It stated

that Cloud "shoved" the resident "face-down on the couch and held him down" until the victim "was hogtied and blind-folded." *See id.* Cloud and another co-participant, Tammy Lewis, left the victim "tied up" and fled from the residence with pain medication and $1,105 in cash. *See id.* The arresting officer charged Petitioner with first degree robbery and second degree assault. *See id.*

On March 3, 2003, a Bell County grand jury issued a two count indictment against Cloud alleging first degree robbery and second degree persistent felony offender. *See* TR at 1–2. Cloud received a notice to appear in court that March for an arraignment, but he failed to comply. *See* TR at 10. The state court thus issued an indictment warrant for Cloud's arrest, and Petitioner was in custody when the circuit court arraigned him on May 16, 2003. *See* TR at 11–16. At the arraignment, the state court appointed counsel for Cloud, ordered a June 16, 2003 pretrial conference, and set bond. *See* TR at 19–21. Appointed counsel originally was Cotha Hudson. *See id.* On May 24, Cloud secured his release from custody pending trial. *See* TR at 17.

In accordance with local custom, the prosecutor submitted a written plea offer prior to the scheduled pretrial conference. *See, e.g.,* DE # 28 at 47–48 (hereinafter "Hearing"). The Commonwealth offered to dismiss the PFO count and recommend a twenty year sentence on the robbery charge. *See id.* Cloud counter-offered with a fifteen year sentence. *See id.* at 28, 48–49. The prosecutor accepted, but Cloud subsequently told the circuit judge that he wanted to reconsider. *See id.* at 49. The judge gave Petitioner "a couple of minutes" and told him that the parties either would reach an agreement "today" or the court would "set the case for trial." *See* DE # 22 Video 6–16–03 12:17. Cloud left the courtroom to deliberate and reject-

ed the plea agreement when he returned. *See* DE # 22 Video 6–16–03 12:22; *see also* Hearing at 49. The circuit judge, acknowledging that Petitioner so acted within his rights, assigned a trial date. *See* DE # 22 Video 6–16–03 12:22; *see also* TR at 25–26.

In October 2003, the state judge reset the trial date for January 27, 2004. *See* DE # 22 Video 10–20–03 9:48; *see also* TR at 29–30. The order, as was custom, further directed Cloud to appear at his court-appointed attorney's office for a final consultation at 1:00 p.m. on January 21, 2004. *See* TR at 29–30. At about this same time, in October or November 2003, Petitioner also received substitute appointed defense counsel, Lowell Lundy. *See* Hearing at 19. Cloud, however, did not appear at Lundy's office for the court-ordered January 21 appointment, resulting in a bench warrant for Cloud's arrest. *See* TR at 35, 38–39. Police apprehended Petitioner, pursuant to the warrant, at 6: 52 p.m. on January 23, 2004. *See* TR at 40–41.

The record indicates that Lundy visited Cloud at jail on January 26, the day before the rescheduled trial. *See* Hearing at 22; *see also* 80–82. Cloud at that time agreed to plead guilty to first degree robbery. *See* TR at 48–50. In exchange, the Commonwealth promised to dismiss the PFO count and recommend a twenty year term on the robbery offense. *See id.* Petitioner appeared in Bell Circuit Court that day to enter his plea. The prosecutor described the proof as:

> The evidence will show ... that this defendant and a co-defendant, who already has entered a plea ... came to the [the victim's] home—came inside his home—and tied him ... with telephone cords.... [The victim] was forced down, face down, on the couch by this defendant. The victim asked—expressed—that he was in physical pain, and that this defendant ignored those pleas.

*See* DE # 22 Video 1–26–04 3:36. Cloud denied during allocution that he ever tied-up the victim, but he acknowledged that he "was there" and was "guilty for being there." [1] *See* DE # 22 Video 1–26–04 3:38 ("[The victim] might have received some injuries, but, as far as tying him up, I didn't do that."); *see also* Hearing at 24. According to the circuit judge, Cloud's in-court admission was "good enough" to support the first degree robbery conviction. *See* DE # 22 Video 1–26–04 3:38.

On March 1, 2004, the court sentenced Cloud to a twenty year prison term, in accordance with the Commonwealth's recommendation. *See* TR at 56–59. Because the conviction was for first degree robbery, Petitioner will be ineligible for parole until he serves at least 85% of his sentence, *i.e.*, seventeen years. *See* KRS § 439.3401(1)-(3) (2003). Referencing the victim's broken arm, the circuit court further determined that the crime involved "serious physical injury" under KRS 439.3401. *See* TR at 56–59. Because first degree robbery is a Class B felony, the "serious physical injury" finding independently triggered the 85% parole ineligibility rule. *See* KRS § 439.3401(1)(3) (2003).

### B. State Post–Conviction Relief—RCr 11.42

Cloud did not file a direct appeal, but he pursued state post-conviction relief, via an RCr 11.42 motion.[2] Cloud alleged that he would not have pled guilty and "would have insisted on going to trial" if he had known that he would be ineligible for parole for seventeen years. *See* TR at 61–64. According to the RCr 11.42 motion, Petitioner asked Lundy, before he ever accepted the plea agreement, when he would be parole eligible, and counsel allegedly advised eligibility in four years. *See* TR at 61.

Cloud also raised a second argument, in a supplemental RCr 11.42 filing, based on a **January 22, 2004** fax to Lundy from the prosecutor, Bell Commonwealth's Attorney Karen Blondell.[3] *See* TR at 72–79. The fax stated, in part:

> I told the victim of my agreement to leave the offer of **15 years** open until after Court on **January 23.** If a plea agreement has not been reached by the end of Court, the offer will be considered withdrawn.

*See* TR at 78–79 (emphasis added). Petitioner alleged in the RCr 11.42 supplement that Lundy visited him **at jail** on the **morning** of **January 23** and advised him that a **twenty year** sentence was the "best deal that he could get." *See* TR at 73. Unaware of the January 22 fax, Cloud stated that he accepted the twenty year offer reported by counsel and pled guilty in court two hours later.[4] *See* TR at 74.

---

1. However, Cloud expressly admitted in the plea agreement that "[he] used physical force upon and caused physical injury to [the victim] while in the course of committing a theft and with intent to accomplish the theft." *See* TR at 50.

2. Cloud also filed a motion for an evidentiary hearing at the state level. *See* TR at 65.

3. The RCr 11.42 supplement included a copy of the fax. *See* TR at 78–79. Cloud explained in the supplemental filing that he discovered the fax in a case file that he received after his incarceration in the state penitentiary commenced. *See* TR at 74.

4. The allegations in the supplemental filing included significant inaccuracies. First, the record shows that police arrested Cloud at **6:52 p.m.** on **January 23.** *See* TR at 40–41. He thus was not in custody that morning. Second, Cloud pled guilty on January 26. *See* TR at 48–50. As such, if Cloud met counsel at jail and pled guilty that same day, the meeting must have occurred on January 26— not January 23, the day the offer in the fax expired. The state trial court did not note any of these discrepancies in its disposition of the RCr 11.42 motion, but the Kentucky Court of Appeals explicitly referenced the inaccuracies in its decision.

The Bell Circuit Court summarily rejected Cloud's RCr 11.42 motion and refused an evidentiary hearing. *See* TR at 83–84. In a one-paragraph order, the trial court found that Cloud had "entered a knowing, intelligent, and voluntary plea." *See* TR at 83. The Kentucky Court of Appeals affirmed, by an unpublished opinion. *See Cloud v. Commonwealth*, No.2005–CA–1070–MR, 2006 WL 2788497, *3 (Ky.App. Sept. 29, 2006). Addressing Cloud's first ineffective assistance claim, the appellate court stated:

In this case, the record does not clearly refute Cloud's allegation that his trial counsel actively misinformed him about his parole eligibility. Thus, there is a factual issue whether his trial counsel's performance was deficient. However, Cloud fails to support his allegation that he would not have accepted the guilty plea if his trial counsel had correctly informed him about his parole eligibility. During his plea colloquy, Cloud told the court that he had been fully informed of the Commonwealth's evidence against him. The prosecutor also outlined the evidence against Cloud, and stated that a co-defendant who had previously pleaded guilty was scheduled to testify at trial. Cloud admitted that the evidence would support a finding that he participated in the robbery.

By accepting the guilty plea, Cloud avoided a conviction as a second-degree persistent felon and a possible life sentence. Cloud does not allege that there was any mitigating evidence which would have supported a lesser sentence or earlier parole eligibility than he received from his guilty plea agreement. Consequently, he cannot show that he was prejudiced by any deficient performance of his trial counsel.

*Id.* at 2006 WL 2788497, *2. The court thus rejected the claim because Cloud did not establish prejudice, per *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Absence of prejudice was also the basis for the court's decision on the second claim:

Cloud next argues that his trial counsel failed to advise him of another plea offer by the Commonwealth. During a pretrial conference on June 16, 2003, the Commonwealth offered to recommend a sentence of fifteen years in exchange for Cloud's guilty plea to first degree robbery. The trial court told Cloud that he had to make a decision that day. After consulting with his attorney, Cloud rejected the offer and the matter was scheduled for trial on January 27, 2004. Cloud alleges that on the morning of January 23, 2004, his trial counsel met with him at the jail. Counsel informed Cloud that twenty years was the best deal he could get. Following sentencing, however, Cloud discovered a letter from the prosecutor stating that the fifteen-year offer would remain open until close of business on January 23. Cloud contends that he was prejudiced by his trial counsel's failure to inform him that the offer remained open.

The record clearly refutes this allegation. The trial court had previously ordered Cloud to appear at his counsel's office for a final consultation on January 21, 2004. When Cloud failed to keep the appointment, the trial court issued a bench warrant for his arrest. The record shows that Cloud was arrested on that warrant at 6:52 p.m. on January 23. Any open plea offer would have expired by that time.

Cloud also asserts that his trial counsel should have advised him of the open plea offer before January 23. Cloud alleges that he attempted to meet with his counsel on several occasions prior to that time, but counsel was too busy to meet

with him. However, it does not appear that Cloud raised this allegation before the trial court. Moreover, the record clearly shows that Cloud had a court-ordered appointment with his trial counsel on January 21. Since Cloud failed to keep that appointment, he cannot reasonably complain about his trail counsel's failure to advise him about the open plea by the Commonwealth.

*Cloud,* No.2005–CA–1070–MR, 2006 WL 2788497, *2. Cloud next petitioned the Kentucky Supreme Court, but that court denied discretionary review. *See Cloud v. Commonwealth,* 2006–SC–0806–D (Ky. Jan. 18, 2007).

### C. Federal Post–Conviction Relief— § 2254

State remedies exhausted, Cloud filed the pending § 2254 motion for federal habeas relief. *See* DE # 1. Per 28 U.S.C. § 2254(d)(1), Cloud argues that the prejudice-based determination by the Kentucky Court of Appeals decision was unreasonable. *See* DE # 5 at 8, 12 (hereinafter " § 2254 Supporting Memo"). As to the parole eligibility claim, Petitioner asserts that the record was inadequate and did not support the state court's definitive assessment that Cloud "cannot show" prejudice. *See id.* at 12; *see also Cloud,* No.2005–CA–1070–MR, 2006 WL 2788497, *2. Cloud alleges that parole eligibility was a key factor in his decision to plead guilty, and he also notes that nothing in the record directly refutes this allegation. *See* § 2254 Supporting Memo at 10; *see also Hill,* 106 S.Ct. at 371; *Sparks v. Sowders,* 852 F.2d 882, 885 (6th Cir.1988).

Furthermore, Cloud maintains that it actually would have been reasonable for him to reject the plea offer. In the worst possible scenario, *i.e.,* conviction for robbery 1st and PFO 2nd, Cloud explains that he would have been eligible for parole in twenty years if he had gone to trial, lost, and received a life sentence. *See* 501 KAR 1:030. Under his current twenty year sentence, Cloud must serve seventeen years before he is parole eligible—a difference in parole ineligibility of only three years. *See* KRS § 439.3401(1)-(3) (2003); *see also* § 2254 Supporting Memo at 11.

Cloud also attacks the prejudice analysis for the second ineffective assistance claim. First, Cloud asserts that defense counsel ultimately was responsible for not transmitting the offer in the January 22 fax before it expired, irrespective of the timing of the meeting at jail between Petitioner and Lundy. *See id.* at 15. Fundamentally, Cloud notes that nothing in the record shows whether counsel ever attempted to communicate the offer before it expired. *See id.* Second, Petitioner argues that the court unreasonably relied on the fact that Cloud missed the January 21 appointment with counsel. *See id.* at 16. Since Cloud missed a court-ordered consultation, the state court held that he "cannot reasonably complain" about counsel's communication failures. *See Cloud,* No.2005–CA1070–MR, 2006 WL 2788497, *2. However, the prosecutor faxed the offer to Lundy's office on **January 22,** and nothing in the record establishes whether counsel had any **prior** knowledge of the offer. In the absence of additional facts, Cloud argues that the Kentucky Court of Appeals improperly based its decision, in part, on the missed **January 21** appointment. *See* § 2254 Supporting Memo at 17.

### D. Federal Evidentiary Hearing

After the Court received the Commonwealth's response and Cloud's reply, Petitioner filed a motion for an evidentiary hearing, per Rule 8(a) of the Rules Governing Section 2254 Cases. *See* DE # 9. The Court granted the motion. *See* DE # 11. According to the Supreme Court, "[i]n deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an

applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, —— U.S. ——, ——, 127 S.Ct. 1933, 1940, 167 L.Ed.2d 836 (2007). The evidentiary hearing assessment also "must take into account ... the deferential standards prescribed by § 2254." *See id.*

In this case, the briefing suggested that counsel's performance may have been deficient. The Kentucky Court of Appeals itself recognized that there was a "factual issue" over whether defense counsel provided inaccurate parole eligibility advice, and the record did not establish whether counsel ever tried to communicate the offer in the January 22 fax. *See Cloud*, No.2005–CA–1070–MR, 2006 WL 2788497, *2. As for prejudice, the Court determined that the record was not adequate to permit a proper evaluation. *See* DE # 11 at 8, 10–11. Depending on the prospective proof and testimony, the Court concluded that Cloud *could* establish a valid basis for federal habeas relief under § 2254. *See Schriro*, 127 S.Ct. at 1940. The Court thus granted the motion for an evidentiary hearing and appointed counsel, per Rule 8(c). *See* DE # 11 & # 18.

The hearing occurred on January 30, 2008. *See* DE # 27.[5] Cloud, the Commonwealth's Attorney Karen Blondell, and defense counsel Lowell Lundy all testified. The Court summarizes the testimony of each witness.

### 1. James Cloud

Cloud testified first. On the day of the underlying offense, Cloud explained that he was at his sister's house visiting her and her roommate, Tammy Lewis. The group decided to "cop" some drugs from a Middlesboro, Kentucky residence. *See* Hearing at 9. Cloud testified that he did

not know the resident "personally" and "had never seen him." *See id.* Rather, per Petitioner, Lewis's mother "used to date" the man, and he believed that Lewis and her mother "used to go over there and pursue him" for drugs. *See id.* at 9–10.

Cloud indicated that he and Lewis approached the residence. *See id.* at 10. According to Petitioner, Lewis knocked on the door and then "stood behind" him. *See id.* Cloud recalled that the resident "partially" opened the door and began "cursing" when he saw Lewis. *See id.* At that point, Cloud testified that "Tammy just pushed her way through the door, me along with her." *See id.* The resident "tripped and fell against the couch." *See id.*

Once inside, Lewis directed Cloud to "watch" the resident because he had a gun in the house. *See id.; see also id.* at 12. Lewis left the room and returned with a "cord." *See id.* at 12. She then instructed Cloud to retrieve a "brown bag off a shelf" in a back closet, apparently because Lewis was too short to reach the bag herself. *See id.; see also id.* at 13. Cloud exited to retrieve the bag. He suspected that the bag had drugs, but he testified that it actually contained Christmas ornaments. *See id.* 12–13. As Petitioner made his way back, he heard the front door slam. Cloud testified that he entered the room and saw the victim "on his knees with his chest leaning against the couch and his hands tied behind his back." *See id.* at 13. According to Cloud, he "ran out the door" and could see Lewis getting into a started car. Petitioner testified that he reached the vehicle before Lewis and his sister left. *See id.*

Police arrested Cloud on September 7, 2002, two days after the home invasion.

---

**5.** The Court appreciates the detailed preparation apparent in the presentations from all counsel.

*See* TR at 3; *see also* Hearing at 14. A Bell County grand jury indicted Cloud in March 2003 for first degree robbery and second degree PFO. *See* TR at 1–2. The circuit court arraigned Cloud in May 2003 and also appointed counsel. *See* TR at 19–21; *see also* Hearing at 14–15. However, Petitioner testified that he only spoke to his attorney for a "brief second" and never actually discussed the "facts" of his case. *See* Hearing at 15–16. Cloud reported no further contact with counsel between his arraignment and the June 16, 2003 pre-trial conference. *See id.* at 16.

Prior to the pre-trial conference, the Commonwealth offered to dismiss the PFO count and recommend a twenty year sentence if Cloud would plead guilty to first degree robbery. *See id.* at 47–48. Petitioner countered with a fifteen year demand for the robbery charge. *See id.* at 28; *see also id.* at 37, 48–49. Although the Commonwealth accepted, Cloud rescinded his counteroffer at the pre-trial conference after an approximately six minute-long conversation with his counsel's secretary. *See id.* at 17–18; *see also id.* at 28, 40–41. Petitioner explained, at the federal evidentiary hearing, that he ultimately considered the fifteen year sentence "unfair" because he had caused no physical injury to the victim. *See id.* at 17; *see also id.* at 40–41. Instead, Cloud asserted that the victim received his injuries during the process of being bound, and Cloud denied that he ever tied-up the victim. *See id.* at 25–26; *see also* DE # 29 at 2 (hereinafter "Cloud Brief")("It is evident … that the required physical injury was caused when the victim … was tied during the course of the theft."); DE # 29 at 13 n. 6 ("Mr. Cloud is not disputing that physical force was used or threatened, but he does deny tying [the victim] and, therefore, denies

inflicting any injury[.]"). Notably, Petitioner did not base his June 2003 decision concerning whether to plead on parole eligibility. In fact, Cloud testified that he never asked about parole eligibility during the June negotiations or pretrial conference. *See* Hearing at 41.

Following the June 16, 2003 pre-trial conference, Cloud essentially testified that he had no substantive discussions with his attorney until January 26, 2004. He reported that he either called or stopped by Cotha Hudson's office "[a]t least twice or three times a month," but claimed she never had time to speak with him. *See id.* at 17–18. In October or November 2003, Lowell Lundy was assigned to Cloud's case in place of Hudson. *See id.* at 18–19. Petitioner reported that he "spoke" to Lundy a "few times, but … never got around to discussing the case" because Lundy was too "busy." *See id.* at 19. Cloud estimated that he visited Lundy's office on the third of every month and called his office about once every two weeks. *See id.* at 39–40.

The circuit court expressly ordered Cloud to attend a final consultation at Lundy's office on January 21, 2004, but Cloud failed to appear. *See* TR at 29–30 (showing service to Cloud), 38. He originally testified that he had a "doctor's appointment" and "forgot" about the meeting, but then claimed he called and notified Lundy's office that he could not attend.[6] *See* Hearing at 20; *see also id.* at 30, 39. Notably, Cloud's testimony does not indicate that he tried to reschedule. Petitioner also testified that he "drove by" counsel's office around 4:00 p.m. on January 21, but the office was closed. *See id.* at 31, 39. Because Cloud missed the court-ordered appointment, police arrested Petitioner on

---

6. At the January 26, 2004 plea hearing, Lundy may have acknowledged that Cloud tried to notify his office of the scheduling conflict.

*See* DE # 22 Video 1–26–04 3:39; *see also* Hearing at 41–42.

a bench warrant at 6:52 p.m. on January 23. *See* TR at 35, 38–41. Between the time that Cloud "drove by" Lundy's office on January 21 and his arrest on January 23, Cloud indicated that he made no further attempt to contact counsel or counsel's office.[7] *See id.* at 43; *see also id.* at 39.

Lundy visited Petitioner at jail on the morning of January 26, 2004. *See id.* at 22. According to Cloud, he asked Lundy "what was on the table," and Lundy responded "twenty years." *See id.; see also id.* at 31. Cloud inquired whether that was the "best" offer available. *See id.* at 22. Lundy left to check with the prosecutor and approximately thirty minutes later confirmed that twenty years was the Commonwealth's final offer. *See id.* At that point, Petitioner testified that he asked Lundy about parole eligibility, and counsel allegedly replied that Defendant would be parole eligible in four years. *See id.* at 23. Cloud determined at that time to accept the offer and plead guilty. *See id.* at 32.

However, Cloud reasserted at the hearing that he would have rejected the offer if counsel had advised him about the 85% parole ineligibility rule. *See id.* at 23. Again, Cloud maintained that he would have gone to trial because he risked only three additional years of parole ineligibility if convicted on both charges. *See id.* at 24–25. Furthermore, Petitioner insisted that he never tied-up the victim or caused physical injury, which is an essential offense element under the facts of this case.[8] *See id.* at 25–26; *see also* Cloud Brief at 13 n. 6 ("[Cloud] does deny tying [the victim] and, therefore, denies inflicting any injury[.]"). As such, Cloud testified that **if he had** gone to trial he would have had a legitimate defense, at least to the first degree robbery charge.[9] *See* Hearing at 25; *see also* Cloud Brief at 2. In addition to the parole eligibility misadvice, Petitioner asserted that counsel's representation prejudiced him because Lundy never discussed the facts of the case, covered the essential elements of first degree robbery, or evaluated any lesser included offenses. *See* Hearing at 23–24, 42; *see also* Cloud Brief at 22–23.

Finally, Cloud testified that Lundy never communicated the Commonwealth's offer in the January 22 fax pledging a fifteen year sentence recommendation. *See* Hearing at 21, 38, 40. Cloud asserted that Lundy did have his complete contact information. According to Petitioner, Lundy had his telephone number, his aunt's tele-

---

7. Plainly, Cloud did not make the January 21 appointment a priority, even though he had a January 27 trial date on charges carrying a possible life sentence. If Cloud truly wanted to speak to counsel about the case, it seems he would have kept the date free from conflict, would have rescheduled if he absolutely could not attend, or would have followed-up on January 22 or 23.

8. State law defines first degree robbery as:
A person is guilty of robbery in the first degree when, in the course of committing theft, he uses or threatens the immediate use of physical force upon another person with intent to accomplish the theft and when he:
(a) Causes physical injury to any person who is not a participant in the crime; or
(b) Is armed with a deadly weapon; or
(c) Uses or threatens the immediate use of a dangerous instrument upon any person who is not a participant in the crime.
KRS § 515.020. Because there is no allegation that this crime involved a deadly weapon or instrument, Cloud asserts that subsection (a) is the relevant provision.

9. Cloud does not contend that he was totally innocent; he merely claims that he was guilty of a lesser included offense. *See, e.g.,* Cloud Brief at 22 ("Mr. Lundy could have easily asked Ms. Blondell if the Commonwealth would accept a plea to the lesser offense of robbery in the second degree—a charge supported by Mr. Cloud's version of events[.]"); *see also* Hearing at 25.

phone number, and his girlfriend's telephone number. *See id.* at 21; *see also* TR at 3, 17 (documents in record setting forth Cloud's phone number). However, and quite importantly, Cloud testified that he also would have rejected the fifteen year prison term if the 85% parole ineligibility rule applied. *See* Hearing at 26–27, 41.

### 2. Karen Blondell

Since 1994, Karen Blondell has been the Commonwealth's Attorney for Bell County. *See id.* at 44. Based on statements from the victim and Cloud's co-defendant, Tammy Lewis, Blondell described the evidence in the underlying case:

> The proof would have been that Mr. Cloud told [the victim] to give him the arm or he'd tear it off. He tried to force the right arm, at which time the victim said, "Oh, God," and Mr. Cloud replied, "God can't help you." He and Ms. Lewis—the proof would be that he held [the victim] down while Ms. Lewis took the phone cords that had been cut and tied him up.

*Id.* at 45–46. Blondell described her case against Cloud as "excellent." *See id.* at 56.

The prosecutor recalled that Cloud did not appear for his original March 7, 2003 arraignment date, resulting in issuance of an indictment warrant. *See id.* at 47. The circuit court ultimately arraigned Cloud in May, appointed counsel, and scheduled a pretrial conference. *See* TR at 19–21. As required by local practice, Blondell stated that she submitted a written plea offer to Cotha Hudson about a week before the June 16, 2003 pretrial conference. *See*

Hearing at 47–48. The Commonwealth offered to dismiss the PFO 2nd charge and recommend a twenty year sentence if Cloud pled guilty to first degree robbery. *See id.*

According to Blondell, Hudson counteroffered with a fifteen year sentence for robbery. *See id.* at 48–49. Because the victim was "aging," "frail," and "terrified" of testifying, Blondell said she considered the counteroffer. *See id.* She ultimately agreed to the modification after consulting the victim and the victim's family. *See id.* at 49. Indeed, Blondell recalled that the parties actually had drafted a plea agreement based on the counteroffer and were before the judge when Cloud decided to reconsider and subsequently withdrew from the agreement. *See id.* Afterwards, she believed the case was "going to trial." *See id.* Under local rule, Blondell explained that "[a]ll offers ... are off the table" if the parties do not reach an agreement during the pre-trial conference.[10] *See id.* at 50.

Based on an entry in her 2004 calendar book, Blondell testified that Lundy contacted her on the morning of January 21 regarding Cloud's case. *See id.* at 52–53. According to Blondell, Lundy asked whether she would "modify" the offer. *See id.* at 54. The content of the January 22 fax indicates that Lundy wanted the Commonwealth to reopen the June counteroffer terms. *See* TR at 78–79. Blondell informed Lundy that she first had to consult the victim and the investigating officer.[11] *See* Hearing at 54; *see also* TR

---

**10.** According to Blondell, the circuit judge is "very hesitant to allow the parties to enter an offer that is like the offer that was open at the pretrial." *See* Hearing at 50. As such, Blondell explained:

> [I]f a plea is not entered on the pretrial conference date—and this is a hard and fast local rule—... the case is set for trial. Any subsequent plea is considered an open plea by Judge Bowling, which means that Judge

Bowling will not entertain any recommendation from the Commonwealth.
*Id.* at 48.

**11.** By that point in the case, Blondell stated that the circuit judge would agree to the previously rejected fifteen year offer *only* if the victim and the police officer consented. *See* Hearing at 54–55.

at 78–79. Blondell's calendar book reflected that she contacted those individuals on January 22. *See* Hearing at 53; *see also* TR 78–79. That afternoon Blondell faxed Lundy's office promising to keep the "offer of 15 years open until after Court on January 23." *See* TR at 79; *see also* hearing at 53–54. The fax further warned that "[i]f a plea agreement has not been reached by the end of Court, the offer will be considered withdrawn." *See* TR at 79.

Blondell testified that her next contact with Lundy was on January 26. *See* Hearing at 55. She could not recall specifically what Lundy requested, but she believed that Lundy probably wanted her to re-extend the offer described in the January 22 fax, which lapsed on January 23. *See id.* at 65. Blondell explained:

> I was immovable about the 20 years by the 26th. In fact, at that point, you know, I'd made it clear in writing that the offer would be withdrawn at the end of court on [January 23]. So I did say to him the only offer that I would even consider taking to the Court is 20 years.

*Id.* at 55–56; *see also id.* at 65–66. Cloud ultimately agreed to plead with a recommended twenty year sentence. *See* TR at 48–50. Blondell testified that she had no knowledge of the plea discussions between Cloud and Lundy. *See* Hearing at 57–58, 69–70.

### 3. Lowell Lundy

The record does not indicate exactly when or why Lundy replaced Hudson as Cloud's counsel.[12] Lundy himself could not recall the date that he entered his appearance but stated that the case was set for trial. *See id.* at 72–73. Consistent with Blondell's testimony, Lundy explained that cases in Bell Circuit Court receive a trial date if the parties fail to reach an agreement during the pretrial conference. *See id.* at 73. According to both Blondell and Lundy, any subsequent plea is an "open plea" under local rule. *See id.*; *see also id.* at 88. Consistent with testimony about June of 2003, Lundy recalled that Cotha Hudson "may have worked out a plea agreement" for Cloud, but he believed that Cloud had "backed out of it." *See id.* at 72.

Lundy denied any allegation that he had been too "busy" to speak to Cloud. *See id.* at 73. In fact, Lundy testified that he actually had "trouble" contacting Petitioner. *See id.* at 72–73. Lundy charged that "[h]e would not come in and see me," and that "[h]e never came to the public defender's office that I was aware of." *See id.* at 73–74. Lundy's testimony described only two instances of direct contact between Lundy and Cloud. The first incident occurred at Bell District Court a "little bit before" the court-ordered January 21 appointment. *See id.* at 73–74, 79–80, 93. According to Lundy, Petitioner came up and offered him $2,000 to "get rid" of the case. *See id.* Lundy said he refused the money.[13] *See id.* at 74. The only other confirmed contact between Lundy and Cloud was at jail on January 26—the day before Cloud's rescheduled trial date. *See id.* at 80; *see also id.* at 81–82.

Lundy recalled that Cloud missed the court-ordered January 21 appointment. *See id.* at 74–75. Lundy further testified that he had "no knowledge or no recollection" of Cloud ever notifying his office that he could not attend. *See id.* at 78. If

---

12. Incidentally, Lundy testified that he knew Cloud and his family long before he represented Petitioner in this case. *See* Hearing at 72; *see also id.* at 19.

13. It is not clear to the Court whether Lundy's testimony accuses Petitioner of a bribe or simply depicts an effort at retention. The flavor was the former. If so, the somewhat fantastic allegation is symmetrical—Cloud testified that Lundy suggested Petitioner should have skipped town before the trial. *See* Hearing at 22.

Cloud did call, Lundy explained that the meeting would have been rescheduled and that no bench warrant would have issued. *See id.* at 78–79. Blondell's calendar book also noted a phone call about the case from Lundy on January 21. *See id.* at 52–53. Lundy said he did not remember the conversation "specifically," but he did not dispute the accuracy of Blondell's calendar book or her testimony. *See id.* at 76–77; *see also id.* at 75.

Lundy had no independent recollection of the January 22 fax from Blondell, but he reviewed the fax before the hearing and confirmed that he did receive it. *See id.* at 80. From the moment Lundy received the fax on January 22 to the time the offer in the fax expired on January 23, Lundy testified that he "never talked" to Cloud. *See id.* at 80–81. Excepting the vaguely-dated district court incident, Lundy reported that Cloud "never tried to get in touch with me." *See id.* at 79. As to Lundy's efforts to contact Cloud:

> I sent word through his buddies, some people in the black community that I know know him, run with him. I said, "Tell [James] he needs to come and talk to me...." "I've got to talk to [James]." I sent word out.

*Id.* at 81; *see also id.* at 74 ("I sent word by [his friends] and I sent word from people in the black community. I said, 'Tell [James] to get his butt up here and talk to me.' I said, 'You know, we've got to—we're set for trial and we got to do something....' He never did come to see me."). Counsel explained that he relied on word of mouth because he did not have Cloud's telephone number.[14] *See id.* at 74. Lundy never sent correspondence to Cloud. *See id.* at 91–92.

Irrespective of whether Lundy's method of communication was reasonable, he could not pinpoint whether he made **any** communication efforts between the January 22 fax and January 23 offer lapse:

> Q: The fax from Ms. Blondell's office is at 4:15 on Thursday the 22nd and court closed, according to Ms. Blondell's testimony, on the 23rd around 4:00. So do you have any specific recollection, yea or nay, that during that 24 hours you sent word through ... his buddies or any of the folks in the black community with whom he ran that in fact there was a plea offer on the table?
>
> A: I don't remember. I can't remember who I told, who I talked to, [or] when I talked to them.

*Id.* at 87–88. At most, Lundy twice stated that he "sent word" for Cloud after he missed the January 21 appointment. *See id.* at 81, 98.

In Lundy's opinion, the precise timing of his efforts to contact Cloud was immaterial. Instead, Lundy curiously insisted that Cloud already knew about the offer described in the fax because Petitioner had negotiated that offer at the pretrial conference. *See id.* at 93–94; *see also id.* at 88, 90. Lundy testified that the counteroffer terms negotiated during the pretrial conference essentially stayed open all the way through January 23, 2004. *See id.* at 92. He explained that the fax "was just to let me know that it [i.e., the offer] would be open until [that] point in time." *See id.* at 90. In fact, Lundy indicated that he urged Cloud to consider accepting the fifteen year sentence when Defendant approached Lundy at the district court. *See id.* at 93–94. The record, however, does not fairly support Lundy's assessment of counteroffer status.[15]

14. Lundy stated that if he did have Cloud's telephone number he would have tried to call the number. *See* Hearing at 74. The case record contained Petitioner's phone number. *See* TR at 3, 17.

15. Cloud consistently maintained that he thought the negotiated counteroffer was off the table, based on statements by the circuit judge. *See* TR at 72, 75; § 2254 Supporting

The deadline in the fax had passed by the time Lundy next spoke to Cloud at jail on January 26. *See id.* at 81–82. He explained:

> Because she had to go to all the trouble [to prepare for trial], she upped it to 20 years. I said—I jumped on him for not coming and seeing me and talking to me about it. He said he'd been busy or something to that effect.
>
> I said, "Well, what do you want to do?" He said something to the effect that that's one of these crimes for which you're not eligible for parole and you pull 85% of the time. He said, "Go talk to her and see if she can let me enter a plea so that I'll be eligible after 20% of the time."
>
> I said, "Now, [James], the law doesn't allow it. She won't agree to it. But I'll go ask her."

\* \* \*

> I went and asked her. And she said, "Well, you know I can't do that." So I went back and said, "[James], there's no way we can do it". I said, "Do you want to take the plea or do you want to stand trial?" I said, "Twenty years is a pretty good clip." I said, "Maybe the jury will

be easier on you than she is." He said, "No. I guess we better go ahead and take it."

*Id.* at 75–76; *see also id.* at 82–83. Based on Lundy's testimony, Cloud thus was already aware that he had to serve at least 85% of a sentence if he pled guilty to first degree robbery. *See id.* at 76, 82, 95, 98–99. Lundy theorized that Cloud learned about the 85% parole ineligibility rule during his previous time in prison. *See id.* at 76. In any event, Lundy expressly denied advising Cloud that he would be parole eligible in four years. *See id.* at 83.

Finally, Lundy admitted that he never reviewed with Cloud each individual element of first degree robbery. *See id.* at 84–85 ("If you're asking me did I itemize each element of that crime and go over [it] with him, no."). Lundy testified, however, that he and Cloud did discuss the facts of the case:

> He told me that what he did is when they got in the house there, that he leaned up over—laid on top of the old man and held him that way. He didn't mention anything to me, as I recall, about tying him up.

*Id.* at 86; *see also id.* at 84. Because Cloud applied physical force, Lundy be-

---

Memo at 2. In the Court's view, Cloud's assessment of offer-status was reasonable. The videotape from the June 16, 2003 pretrial conference showed the circuit judge informing Cloud that the parties either would reach an agreement that day or the case would go to trial. *See* DE # 22 Video 6–16–03 12:17. Blondell also testified that pleas entered subsequent to the pretrial conference in Bell Circuit Court are "open pleas", *i.e.,* without a binding recommendation, under local rule. *See* Hearing at 48. Even Lundy testified that pleas entered post pretrial conference are open pleas. *See id.* at 73, 88. Furthermore, both Blondell's testimony and the content of the January 22 fax show that Blondell had to consult the victim and the investigating officer before she could re-extend the lapsed counteroffer terms. *See id.* at 54; *see also* TR

at 78–79. The record thus does not support Lundy's contention that the negotiated counteroffer stayed open, or that Cloud knew (at any time subsequent to the pretrial conference) that he could plead guilty on the same terms as the June counteroffer.

Perhaps Lundy believed the negotiated counteroffer was, in essence, available because *he* knew the local rule was not "inflexible," and because *he* knew that "you can reason with [Blondell] about these cases up until.. the Friday before it's set for trial on Tuesday." *See id.* at 88–89; *see also id.* at 92. Indeed, the offer in the fax expired on Friday, January 23, 2004, and Cloud's trial was set for Tuesday, January 27, 2004. Lundy's testimony, however, provides no credible basis for contending that Cloud would have known that the counteroffer remained viable.

lieved that he was liable for first degree robbery, even if Petitioner was not the person who actually bound the victim in this case. *See id.* at 85–86.

### E. Post–Hearing Briefs

#### 1. Petitioner

Cloud describes Lundy's contention that Petitioner knew about the 85% parole ineligibility rule before he pled guilty as unreasonable. *See* Cloud Brief at 21. Cloud therefore urges the Court to find that counsel provided grossly inaccurate parole eligibility advice. Furthermore, Petitioner argues that the record establishes prejudice, *i.e.,* that but for counsel's misadvice there is a reasonable probability that Cloud would have gone to trial. Cloud contends that he had a legitimate defense to first degree robbery and that he would have risked only three additional years of parole ineligibility by rejecting the plea offer. *See id.* at 22–23.

Cloud's asserted defense is the centerpiece of his post-hearing brief and prejudice analysis. Because the underlying crime did not involve a deadly weapon or instrument, Cloud argues that the Commonwealth would have had to show that Petitioner caused physical injury to establish first degree robbery. *See id.* at 2. Cloud does not dispute that the victim suffered physical injury, but he contends that the victim received the injuries as he was being tied-up by Lewis. *See, e.g., id.* at 2 & 13 n. 6. From the plea colloquy to the evidentiary hearing, Petitioner always has denied that he bound the victim. *See* DE # 22 Video 1–26–04 3:38; Hearing 25–26; Cloud Brief at 13 n. 6. As such, Cloud argues that he caused no physical injury, a predicate to first degree robbery under the facts in this case. *See* Cloud Brief at 2 & 13 n. 6.

Instead of the first degree charge, Cloud asserts that the facts correspond to **second** degree robbery. *See id.* at 22. According to state law, the sentencing range for a second degree robbery and second degree PFO conviction is ten to twenty years. *See* KRS § 515.030; § 532.080; § 532.060. Based on 501 KAR 1:030, Petitioner submits that parole eligibility, relative to such a conviction and sentence, would begin in ten years. *See* Cloud Post–Hearing Brief at 5. Considering the circumstances, Cloud maintains that he definitely would have gone to trial if counsel had: a) reviewed the essential offense elements of first degree robbery; b) discussed lesser included offenses; and c) correctly assessed his parole eligibility for first or second degree robbery. Cloud argues that the full scope of counsel's misadvice and deficient representation plainly establishes prejudice. *See id.* at 20–23. The upshot, per Petitioner, is that he would have presented a valid basis for a lesser conviction. As such, Cloud contends that the parole misadvice prejudiced him to a degree warranting relief.

Finally, according to Cloud, the record also shows that Lundy neither communicated or made reasonable efforts to communicate the plea offer in the January 22 fax. *See id.* at 23. Cloud acknowledges, however, that establishing prejudice as to this theory is difficult, if not impossible, because Petitioner flatly testified that he would have rejected the fifteen year sentence under the 85% parole disability rule. *See id.* at 24.

#### 2. Commonwealth

The Commonwealth asserts that Lundy's testimony was credible and showed that Cloud did not receive inaccurate parole eligibility advice. *See* DE # 30 at 12–14 (hereinafter "Respondent Brief"). Considering the evidence against Cloud and the potential twenty year-to-life sentence that he faced, the Commonwealth additionally argues that "it is improbable" that Petitioner would have rejected the plea

agreement. *See id.* at 17. As such, the Commonwealth contends that the prejudice determination by the Kentucky Court of Appeals was not "objectively unreasonable," per 28 U.S.C. § 2254(d).

Respondent also asserts that Cloud defaulted the contention that he is not guilty of first degree robbery. *See id.* at 18. However, to the extent that the argument factors into Cloud's prejudice analysis, the Commonwealth contends that the argument has no legal merit. The crime in this case undeniably involved physical injury, and Cloud admitted that he participated in the robbery. Under Kentucky law, Respondent submits that these facts are sufficient to support Cloud's conviction and negate prejudice. *See id.* at 18–19.

According to the Commonwealth, Cloud also defaulted his second ineffective assistance claim. *See id.* at 20–21. Respondent contends that Cloud never presented in state court the precise argument raised in this forum, *i.e.,* whether counsel failed to communicate the offer in the fax between the time Lundy received the fax on January 22 and the offer lapse on January 23. *See id.* at 21. However, the Commonwealth alternatively asserts that the claim fails on the merits. Respondent argues that Lundy made reasonable efforts to contact Cloud. In addition, the Commonwealth contends that there is no prejudice, as a matter of law, because Cloud testified that he would have rejected the offer, based on the 85% parole ineligibility rule. *See id.* at 23–24.

## II. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter "AEDPA" or "Act") established a "highly deferential standard for evaluating" state court decisions. *See Bell v. Cone,* 543 U.S. 447, 125 S.Ct. 847, 853, 160 L.Ed.2d 881 (2005). Petitioner's post-hearing brief notably did not assess Cloud's ineffective assistance claims relative to the Act's standards. The AEDPA standard of review, however, is a critical feature of the analysis. The Act provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, *or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;* or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2)(emphasis added).

The "contrary to" and "unreasonable application" clauses in § 2254(d)(1) have independent meanings. *See Bell,* 122 S.Ct. at 1850. In this case, the "unreasonable application" clause is the relevant provision. Whether Cloud received ineffective assistance of counsel is a mixed question of law and fact, *see Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 2070, 80 L.Ed.2d 674 (1984), and the Sixth Circuit evaluates such mixed questions for an unreasonable application of federal law. *See Mitchell v. Mason,* 325 F.3d 732, 738 (6th Cir.2003).

■ "Under the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from the Supreme Court's decisions but unreasonably applies it to the facts of the petitioner's case." *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000); *see also Foley v. Parker,* 488 F.3d 377, 382 (6th Cir.2007). The key consider-

ation is whether the "state court's application of clearly established federal law was *objectively unreasonable.*" *See Williams,* 120 S.Ct. at 1521 (emphasis added). Thus, a state court determination that is merely "incorrect" or "erroneous" does not satisfy § 2254(d)(1). *See id.* at 1522; *see also Bell,* 122 S.Ct. at 1850.

Furthermore, the state court adjudication must contravene "clearly established federal law." "[C]learly established federal law" refers to Supreme Court holdings, as opposed to dicta, rendered at the time of the relevant state-court decision. *See Williams,* 120 S.Ct. at 1523. Lower federal court decisions, though not binding precedent, may inform this analysis and help "determine whether a legal principle had been clearly established by the Supreme Court." *See Foley,* 488 F.3d at 382.

 Finally, the AEDPA provides that "a determination of a factual issue made by a State court shall be presumed to be correct." *See* 28 U.S.C. § 2254(e)(1). The "presumption of correctness" requires this Court to give appropriate deference to state court findings of fact. *See Carter v. Bell,* 218 F.3d 581, 590–91 (6th Cir.2000)(noting that the amended AEDPA standard requires greater deference to state courts). Under § 2254(e)(1), "primary or historical facts found by state courts are presumed correct and are rebuttable only by clear and convincing evidence." *See Lancaster v. Adams,* 324 F.3d 423, 429 (6th Cir.2003) (citations omitted). The presumption of correctness also attaches to factual findings by state appellate courts, based on the trial record. *See Bowling v. Parker,* 344 F.3d 487, 497 (6th Cir.2003) (citing *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 769, 66 L.Ed.2d 722 (1981)).

 Significantly, the presumption does not apply to mixed questions of law and fact. Thus, because "both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact," neither finding is subject to the § 2254(e)(1) presumption. *See Ramonez v. Berghuis,* 490 F.3d 482, 487 (6th Cir.2007). The "underlying facts" supporting such findings, however, may warrant deference. *See, e.g., Strickland,* 104 S.Ct. at 2070 (requiring deference as to underlying facts); *Brooks v. Bobby,* 2006 WL 2456494, at *13 n. 3 (N.D.Ohio Aug.22, 2006)("Although the Court need not defer to the ultimate findings on whether counsel provided ineffective assistance, as to the underlying facts, such as the factual nature of the evidence and the conduct of counsel, deference to the state court findings is still warranted so long as support exists in the record.").

### III. Analysis

Ineffective assistance of counsel has two components: deficient performance and prejudice. *See, e.g., Strickland,* 104 S.Ct. at 2064. The Kentucky Court of Appeals rejected both of Cloud's ineffective assistance claims based on the prejudice prong. *See Cloud,* No.2005–CA–1070–MR, 2006 WL 2788497, *2. To satisfy § 2254(d), Cloud must show that the state court's prejudice determination was "objectively unreasonable." Because the Kentucky Court of Appeals did not resolve whether Lundy's representation, as relevant, was constitutionally deficient, § 2254(d) would not apply to that assessment. *See Wiggins v. Smith,* 539 U.S. 510, 123 S.Ct. 2527, 2542, 156 L.Ed.2d 471 (2003).

 The state court focused on the prejudice analysis stated by *Strickland* and *Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)(importing *Strickland* into guilty plea context). To the extent the Kentucky resolution ignored or failed to resolve the deficient performance prong, this Court's analysis is de novo. *See McAdoo v. Elo,* 365 F.3d 487, 498 (6th Cir.2004).

Concerning prejudice, relative to a guilty-plea:

In order to satisfy the "prejudice" requirement in a plea agreement context, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."

See id. (quoting *Hill,* 106 S.Ct. at 370). Similarly, a claim based on failure to communicate a plea offer involves proof, by a claimant, that "but for his counsel's erroneous advice, there is a reasonable probability that he would have accepted the plea." *See Magana v. Hofbauer,* 263 F.3d 542, 550 (6th Cir.2001); *Griffin v. United States,* 330 F.3d 733, 737 (6th Cir.2003)(requiring "claimant [to] show a reasonable probability that he would have pleaded differently [but for counsel's errors]."); *Guerrero v. United States,* 383 F.3d 409, 416 (6th Cir.2004)(phrasing prong as " 'reasonable probability' that if [defendant] had been notified of the plea offer, he would have accepted it").

The concept of reasonable probability involves both a subjective and objective component. The threshold *Hill* showing demands a petitioner's affirmative subjective assertion that proper lawyering would have affected the plea outcome. *See Hill,* 106 S.Ct. at 371 (rejecting claim because "Petitioner did not allege in his habeas petition that, had counsel correctly informed him ... he would have pleaded not guilty and insisted on going to trial"). However, an objective filter plainly dominates the *Strickland/Hill* analysis. *See, e.g., Frost v. United States,* 2007 WL 1960605, (W.D.Va. July 5, 2007)(noting, as to prejudice prong in guilty-plea context: "From the perspective of a reasonable defendant in the same circumstances as petitioner, the court must consider such objective factors as the strength of the government's case versus the strength of the defense case and any sentencing benefit received through the plea bargain versus the possible penalties to which the defendant would have been subjected if convicted after trial.")(citing *Ostrander v. Green,* 46 F.3d 347, 355 (4th Cir.1995), *overruled on other grounds, O'Dell v. Netherland,* 95 F.3d 1214, 1222–23 (4th Cir.1996)).

The Sixth Circuit's decision in *McAdoo* exemplifies the subjective/objective duality. There, the habeas petitioner's subjective position on the prejudicial effect of bad advice, relative to the guilty plea, was "ambiguous." *See McAdoo,* 365 F.3d at 499–500 (noting statements at trial record cutting both directions). Further, the Sixth Circuit sanctioned the state court's assessment of the effect of significant evidence of guilt as to the "reasonable probability" of prejudice. *See id.* ("[T]he evidence against him ... was overwhelming, a fact that the state courts were entitled to take into account in determining whether he would have pled guilty in the absence of any erroneous advice rather than go to trial[.]"). Thus, assessment of both a petitioner's stated personal views and an objective review of other dynamics led to a finding of no prejudice under *Hill's* second prong. *See id; see also Hunter v. United States,* 160 F.3d 1109, 1115 (6th Cir.1998)(rejecting prejudice based on evaluation of evidence and court's determination that theoretical decision to go to trial, instead of plead, was "highly improbable").[16]

---

**16.** To be clear, the Sixth Circuit has stated repeatedly that it does not necessarily require a claimant to adduce "objective" evidence in support of a subjective assertion. *See, e.g., Griffin,* 330 F.3d at 737–38. However, requiring that a subjective assertion be reasonable, per *Hill,* is different from requiring evidentiary corroboration from an objective source. Without question, the

The Court ultimately agrees that, as far as it went, the state court's prejudice-based disposition was not objectively unreasonable under the § 2254 standards. Additionally, for reasons compelled by the record as subsequently explained, Cloud suffered no prejudice on the grounds for relief presented that the state court did not fully address.

### A. Parole Eligibility

 Cloud first alleges that he accepted a twenty year sentence for first degree robbery based on counsel's advice that he would be parole eligible in four years. However, the first degree robbery conviction requires, per statute, that Petitioner serve at least 85% of his sentence. *See* KRS § 439.3401. As stated, to show prejudice in the guilty plea context, Cloud mush establish that, but for counsel's misadvice, there is a reasonable probability that he would not have pled guilty and would have insisted on going to trial. *See Hill*, 106 S.Ct. at 370.

Based on his proffered defense to first degree robbery, Cloud asserts that there is a *substantial* probability in this case that he would have gone to trial if properly counseled. *See* Cloud Brief at 23. Again, Petitioner's defense theory is that he caused no physical injury to the victim, which Cloud argues the Commonwealth would have had to prove to establish first degree robbery under the facts alleged in this matter. *See id.* at 13 n. 6. Petitioner explains that the victim received his inju-

ries as he was being bound, and Cloud consistently denies that he bound the victim. *See id.* at 2 & 13 n. 6. Furthermore, Cloud contends that he would have risked but three additional years of parole ineligibility by rejecting the plea offer and proceeding to trial. According to Petitioner, by going to trial, he thus "had a lot to gain" and "very little lose." [17] *See id.* at 22.

As a *factual* matter, the evidence may indicate that Cloud did not actually tie-up the victim. The police report, Blondell's summary of the evidence, and Lundy's recollection of the facts, as provided by Cloud, all suggest that Petitioner held the victim down as Tammy Lewis bound him. *See* TR at 3; Hearing at 46, 86. Cloud's testimony suggests even less involvement. He testified that he "watched"—*i.e.,* in the Court's view, guarded—the victim while Lewis was in another room. According to Cloud, Lewis returned with a "cord" in her hand and directed Petitioner to retrieve a bag from a back closet. *See* Hearing at 12. Cloud recalled that the victim was bound when he returned to the room. *See id.* at 13. Quite notably, however, Petitioner's signed plea agreement conceded that Defendant "used physical force" and "caused physical injury." *See* TR at 50.

In the Court's view, the different factual scenarios have no effect on the legal result. According to the Kentucky Supreme Court, "first degree robbery" is a "crime capable of being divided amongst princi-

---

Sixth Circuit assesses the validity of a subjective assertion in light of the surrounding objective circumstances in a case. *See id.* (looking to "substantial disparity between" penalty and punishment to "establish a reasonable probability" under *Hill's* second prong).

**17.** The analysis in Cloud's post-hearing brief did not reference § 2254(d)(1), but the argument undermines the *reasonableness* of the state court decision, as that section requires.

The Kentucky Court of Appeals rejected Petitioner's parole eligibility claim because Cloud "admitted" that the record supported his conviction, and because there was no evidence that "would have supported a lesser sentence." *See Cloud*, No.2005–CA–1070–MR, 2006 WL 2788497, *2. Because Cloud denied during his plea colloquy that he bound the victim, Petitioner contends that the record actually supported a lesser sentence for 2nd degree robbery. *See* DE # 22 Video 1–26–04 3:38.

pals." *See Commonwealth v. Smith*, 5 S.W.3d 126, 129 (Ky.1999). The court explained:

> [A] mere division of labor between robbers in the commission of the crime does not preclude conviction of each as a principal. In so holding, we adhere to the common view that
>
> > Generally all who are present at the commission of a robbery, rendering it countenance and encouragement, and ready to assist if needed, are liable as principal actors. To be liable the accused need not to have taken any money from the victim with his own hands, or actually participated in any other act of force or violence, it is sufficient that he came and went with the robbers, was present when the robbery was committed, and acquiesced therein.

*Id.* (quoting 67Am.Jur. 2nd Robbery § 9); *see also Johnson v. Commonwealth*, 2005 WL 2045480, at *1–2 (Ky. Aug.25, 2005)(applying Smith in a case where the defendant was convicted of first degree robbery based on a physical injury **caused by another co-participant**).

At a minimum, the record in this case establishes that Cloud was "present" during the robbery, joined in, and "acquiesced." *See* DE # 22 Video 1–26–04 3:38 ("I was *present*, and I'm guilty for being there.")(emphasis added); *see also* Hearing at 27 (Cloud acknowledging that he "participated" because he "was there"). Indeed, Cloud's own description of his role

in the offense shows that he actively "participated" and "assisted." *See* Hearing at 10–11 (noting that assailants "pushed" into home, "me along with her" causing victim to "trip[ ] and f[a]ll against the couch"); 12–13 (Cloud testifying that he watched the obviously-objecting, *i.e.*, cursing at Lewis, resident to prevent his gun retrieval and took a brown bag from a back closet that Cloud suspected had drugs, per Lewis's directions). Cloud's presence, acquiescence, and active involvement plainly support his first degree robbery conviction given the established physical injuries to the victim. *See Smith*, 5 S.W.3d at 129. According to *Smith*, whether Cloud "actually participated" in the particular "act of force or violence" that caused the victim's injuries is immaterial.[18] *See id.*

The Court therefore rejects Cloud's contention that he had a legitimate defense. In view of the facts and state law, it is quite *unlikely* that Cloud's legal argument would have succeeded at trial. *See, e.g., Hill*, 106 S.Ct. at 371 ("[W]here the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will largely depend on whether the affirmative defense likely would have succeeded at trial."). Based on *Hill*, counsel's representation in this regard did not prejudice Defendant.

The Court having refused Petitioner's central premise—that he had a valid defense—Cloud's entire prejudice analysis unravels. On these facts, a conviction for first degree robbery and second degree PFO was likely,[19] and that conviction

---

**18.** The Court notes, however, that the majority of the evidence fairly indicates that Cloud directly assisted Lewis in the "act of force or violence." *See* TR at 3 (police report stating Cloud "shoved" the victim "face down" and "held him down until" Lewis bound the victim); Hearing at 46 (Blondell describing the evidence as "the proof would be that he held [the victim] down while Ms. Lewis took the phone cords … and tied him up"); Hearing at 86 (Lundy recalling that Cloud "told me

that what he did is … he leaned up over—laid on top of the old man and held him"). Cloud disputes that he assisted Lewis as she bound the victim, *see* Cloud Brief at 13 n. 6, but his testimony shows that he at least "acquiesced" to having the resident tied-up. Cloud surely realized that Lewis intended to tie-up the resident when she returned with a "cord" in her hand. *See* Hearing at 12–13.

**19.** Cloud conceded in his post-hearing brief that his criminal record triggered the second

would have resulted in a potential life sentence and parole ineligibility of twenty years. If convicted of second degree robbery and second degree PFO, which was Petitioner's theory, Cloud estimated that he would have received a ten-to-twenty year sentence and parole eligibility in ten years. *See* Cloud Brief at 5. Relative to the plea agreement that Cloud accepted, he thus argues he would have risked a potential **life sentence** and three additional years of parole ineligibility in an effort to secure only a **seven** year reduction in his parole ineligibility. After analyzing the *probable* outcome if Cloud would have gone to trial, the Court simply cannot credit the characterization that Petitioner actually "had a lot to gain" but "very little to lose."

The Court finds Cloud's calculus quite dubious. A Class A felony—wrought by the PFO 2nd count—would have carried a potential life sentence, with parole eligibility in 20 years. The suggested gap between parole eligibility sounds small: 17 years on the conviction at issue versus 20 years on a possible life sentence. However, at 20 years on the conviction, Cloud will have served out his time and he will be free. At 20 years on a life sentence, Cloud would only gain **eligibility** to be considered for parole. His actual time in custody could extend for the entirety of the life sentence. Being parole eligible is hardly the same thing as being granted parole, a discretionary decision driven by many variables. *See* KRS § 439.340; 501 KAR 1:030. The custodial comparison under the convictions, 20 years versus life in prison, logically is the critical factor. The Court notes that, when Cloud negotiated in June of 2003, and nearly struck a 15 year deal with the Commonwealth, he did not

inquire about or consider parole eligibility as an issue. *See* Hearing at 40–41.

In sum, the determination by the Kentucky Court of Appeals, as to this claim, was reasonable. *See* 28 U.S.C. § 2254(d)(1). As the state court noted, the facts established that Cloud participated in the robbery, and the record did not rationally support any lesser sentence. *See Cloud,* No.2005–CA–1070–MR, 2006 WL 2788497, *2. Based on the grim circumstances Cloud faced, the state court's interpretation—that Cloud would have pled with or without parole misadvice—is not objectively unreasonable. The court's prejudice analysis was a reasonable application of *Hill. See Hill,* 106 S.Ct. at 371 (indicating there is no prejudice if it is "inconceivable" that the "defendant would have gone to trial on [the asserted] defense," or, "if he had done so," that he "would have been acquitted")(quoting *Evans v. Meyer,* 742 F.2d 371, 375 (7th Cir. 1984)).

Although prejudice decides the claim, to make this recommended disposition complete and to fulfill the District Court's referral, the Court feels compelled to address the first *Strickland* prong, deficient representation. The Sixth Circuit recognizes that gross parole misadvice may effect a denial of counsel. *See McAdoo,* 365 F.3d at 499 ("When defense counsel grossly misinforms a defendant about details of parole and the defendant relies on that misinformation, the defendant may have been deprived of his constitutional right to counsel."); *see also Sparks v. Sowders,* 852 F.2d 882, 885 (6th Cir.1988)("We now hold that gross misadvice concerning parole eligibility can amount to ineffective assistance of counsel."). Misstating parole eligibility by 65%, which is the allegation at

---

degree PFO enhancement. *See* Cloud Brief at 3 ("Mr. Cloud does not deny that he was convicted of a previous felony which would

have triggered the sentencing enhancement set forth in KRS § 532.080(5).").

issue, would qualify as gross misadvice, in the Court's view. *See Beavers v. Saffle,* 216 F.3d 918, 925 (10th Cir.2000)(finding petitioner "would be entitled to relief" where counsel advised petitioner "it would take ten to twelve years to make parole," but state law actually required "twenty-two and one-half years"); *O'Tuel v. Osborne,* 706 F.2d 498, 500–01 (4th Cir.1983)(holding that ten year difference between actual parole eligibility date and that advised by counsel constituted ineffective assistance).

 Here, the evidence was in sharp conflict over the discussion between Cloud and Lundy on January 26, 2004. The Court finds Lundy's testimony on the parole-eligibility discussion incredible. Defining the parole rules in the context of a robbery/PFO indictment is no easy matter, as the context of this case demonstrates. Prior to a change in the violent offender statute, which extended violent offender status to **any** first degree robbery, Cloud would only have fallen under the 85% rule if he were found to have inflicted "serious physical injury." *See* KRS § 439.3401(8)(tying new rule, on first degree robbery, to "effective date of this Act," which was July 15, 2002). The critical change occurred less than two months prior to the offense at issue. In fact, a lawyer seeking definition under the Commonwealth's parole reg would be misled about application even today; that regulation, 501 KAR 1:030(3)(1)(b), continues to define inaccurately the 85% parole disability scope. *See, e.g., Wathal v. Harrod,* 229 S.W.3d 599, 600 (Ky.Ct.App.2007)(noting that "DOC regulation [501 KAR 1:030(3)(1)(b)] is in conflict with the violent offender statute"). Lundy testified that Cloud, **on his own,** had mastered these rules at the time of his plea, presumably from a prior stint in prison. *See* Hearing at 76; *see also id.* at 82, 95, 98–99. The problem is that Cloud had scarcely been in custody, and he certainly had not been in prison, since the effective date of the statutory change.[20]

In the Court's view, Lundy likely did inform Cloud that he fell under the 20% rule. The indictment at issue **did not** assert that Petitioner caused serious physical injury. *See* TR 1. Thus, the only charge in play involved "physical" injury, and prior to the July 2002 change, that matter would have implicated only the 20% rule. Maybe Lundy knew the statute had changed around the time of the offense— September 5, 2002—and had done an analysis of the offense date versus enactment date; maybe he did not know. The notion that Cloud volunteered the requisite 85% knowledge to his counsel in their lone pretrial discussion over plea terms simply defies belief.[21]

20. It also is telling to the Court, as Cloud advocates, that Commonwealth Attorney Blondell could not recite the parole rules from memory. She certainly was a model witness, and the Court would be hard-pressed to accept that Cloud's January 26, 2004 mastery of the parole rules exceeded that of Ms. Blondell, who confessed the need to consult the DOC "chart" when analyzing parole disability. *See* Hearing at 64.

21. In addition, Lundy testified that he actually negotiated with Blondell for a plea that would qualify Cloud for the 20% rule, per Cloud's alleged request during the meeting at jail on January 26. *See* Hearing at 82 ("And he wanted me to talk to Ms. Blondell and see if we could arrange it for him to be eligible for 20% of the time and I said it won't do no good, but I'm going to talk to her, and she said, 'You know I can't do that.' "); *see also id.* at 75–76. Blondell's testimony did not reflect any such negotiations on January 26. She indicated that Lundy merely asked her to "reconsider" the lapsed offer from the fax. Blondell, who was a highly-credible witness, made no reference to parole eligibility as a component of Lundy's approach on January 26. *See id.* at 65.

### B. Failure to Communicate the Faxed Plea Offer

Cloud also alleges that counsel failed to communicate the offer in the January 22 fax, which pledged a fifteen year sentence recommendation. To demonstrate prejudice in this context, Cloud must show there is a reasonable probability that he would have accepted the offer if properly advised. *See, e.g., Guerrero v. United States,* 383 F.3d 409, 416 (6th Cir.2004). Cloud unequivocally testified that he would have **rejected** a fifteen year prison term if the 85% parole ineligibility rule applied. *See* Hearing at 26–27, 41. Moreover, the 85% parole ineligibility rule undoubtedly would have applied because the offer required Cloud to pled guilty to first degree robbery, which categorically invokes that rule. *See* KRS § 439.3401. The record thus conclusively shows that, based on Petitioner's sworn position at the hearing, Cloud would not have accepted the offer from the fax. As such, he cannot show prejudice. *See Guerrero,* 383 F.3d at 416.

As the Court previously discussed, a habeas petitioner's *subjective* plea of prejudice is a threshold *Strickland/Hill* requirement. Simply put, Cloud now has taken a factual position that entirely negates his second relief theory. Petitioner resolutely[22] stated on the record that he would not, in fact, have accepted the fifteen year offer if properly advised as to parole eligibility. The assertion is fatal to any prejudice claim concerning that uncommunicated plea.

 Again, for completeness and to fulfill the District Court's referral, the merits of the deficient representation claim warrant attention. Categorically, "A defense attorney's failure to notify his client of a prosecutor's plea offer constitutes ineffective assistance of counsel under the Sixth Amendment and satisfies the first element of the *Strickland* test." *Griffin,* 330 F.3d at 737. Here, Cloud established that Lundy essentially took no steps to apprise him of the renewed plea offer between faxed confirmation of the offer—late on January 22—and expiration of the offer—late on January 23.[23]

Lundy's description of the events suffers again from credibility problems. Ms.

**22.** If "ambiguous" subjective statements about prejudice proved fatal in *McAdoo,* then unambiguous statements, during the habeas hearing, *a fortiori* doom Cloud's second claim. *See McAdoo,* 365 F.3d at 499–500.

**23.** The state court's resolution hinged on rejecting a factual premise in Cloud's claim— *i.e.,* that the offer remained open at the time of the jail meeting on January 23. Indeed, Cloud obviously was wrong as to that date— the jail meeting occurred on January 26, after the plea expired, not on January 23, when the plea remained open.

The Commonwealth raises the issue of procedural default as to consideration of the true chronology. For several reasons, the Court believes that procedural default does not apply. First, the state briefing indicates that Petitioner corrected the error before the state court. *See* DE # 6–6 at 57 (state reply brief noting error and clarifying that true claim was failure to communicate plea offer). Fur-

ther, the Court excuses Cloud for his confusion on the dates. The Bell Circuit Court's own Judgment reflects that the plea occurred on January **23**, 2004. *See* TR at 56; *see also* TR at 51 (sentencing order stating that Cloud entered plea "in open Court on the 23rd of January, 2004"). Cloud consistently maintained that he met with Lundy on the morning of the plea. It would be unreasonable to blame him for recalling that date as January 23 since the Court's own official records affirmatively misstate the true date.

Finally, the state decision did discuss the failure to communicate claim on the merits. *See Cloud,* No.2005–CA–1070–MR, 2006 WL 2788497, *2. Given the reply brief clarification and the state court's reference to the merits, this Court cannot find that the state rested its decision on application of a state procedural bar. *See, e.g., Coe v. Bell,* 161 F.3d 320, 330–31 (6th Cir.1999). As such, the claim, as phrased, is not procedurally defaulted.

Blondell plainly testified that no offer was on the table between June 2003 and January 2004. By virtue of a calendar entry, she pegged reopening of negotiations to Lundy's January 21 call, which necessitated that she again confer with the victim and officer. Blondell so conferred and then faxed the January 22 offer, set to expire the next day. Lundy, by contrast, claimed that the same offer was on the table from June all the way to January 23, 2004. Blondell's testimony contradicts Lundy's position, and even Lundy testified that, after the pre-trial in Bell Circuit Court, pleas taken are considered "open" and thus not subject to a negotiated Commonwealth recommendation. Cloud knew of no offer from the date of the pretrial in June of 2003 to the date of trial.

Lundy had no recollection of specifically trying to communicate the offer to Cloud in a timely fashion. As such, the Court feels constrained to find that Lundy failed to fulfill his categorical duty to communicate the offer prior to its expiration.

This being said, the Court also extends significant fault to Cloud. Lundy (and indeed common sense) fairly could expect the criminal defendant facing a potential Class A felony to show some level of urgency concerning an impending trial. Cloud's vaguely-described contact efforts hardly depict an engaged client. Thus, Petitioner's failure to attend the January 21, 2004 court-ordered meeting is hardly a "red herring." Lundy obviously had called Blondell in advance of that meeting to get the wheels turning [24] on a potential last-minute plea deal. Had Cloud attended, Lundy likely would have discussed the sta-

tus with him and then been in a position to respond to Blondell's fax. Petitioner's cavalier violation of court order signifies that Cloud denied himself a critical contact with counsel at a critical point in the chronology.

Ultimately, the Court agrees that the failure to communicate did not prejudice Cloud, though for reasons different from the state court. The state court focused on the January 21 failure to attend, but the Court agrees that, contrary to the state court's supposition, no offer existed at that time. It thus was factually inaccurate to find that Cloud's absence on January 21 substantially negated prejudice as to events from January 22 to January 23. Rather, the lack of prejudice comes from Cloud's own hearing testimony before this Court. Again, Cloud swore before the Court—now with a full understanding of all applicable facts and standards—that he would not have taken the fifteen year deal that Blondell extended. If Cloud would not have taken the deal, then Lundy's failure to tell him about the deal resulted in no harm.

The outcome is difficult. The apparent basis for Cloud's continuing rejection is his faulty belief that he has a colorable defense, *i.e.*, that he directly caused no injury. As explained, Cloud's defense would likely not have succeeded at trial, and rejecting the offer for this reason would be irrational.[25] The Court, however, finds itself bound by Cloud's testimony.

### C. Additional Claims

▮ Finally, Cloud's post-hearing brief makes a tentative attempt to raise two

---

**24.** Lundy also gets credit for engineering the twenty year deal on January 26. Ms. Blondell easily could have refused to extend even that offer, since she was prepared for trial on January 27.

**25.** Petitioner's brief cites the logical "rub" Cloud's testimony raises: Since Cloud pled

guilty to 20 years, he surely would also have pled guilty to 15 years; yet, Cloud himself denies he would have taken the 15 years. While a rational defendant should view either as a good result on these facts—irrespective of parole issues—the Court cannot paternalistically impose a consistent result in the face of Cloud's strong contrary testimony.

more claims. *See* Cloud Brief at 17–20. First, the brief asserts that defense counsel was also ineffective because he failed to review with Cloud the essential elements of first degree robbery. Second, Cloud alleges in the brief that the factual basis for his guilty plea was insufficient because Petitioner denied during the plea colloquy that he tied the victim. *See id.* at 19. The Court rejects both of these claims.[26]

■ In addition to procedural irregularities in this Court, Cloud plainly did not raise either issue in state court and thus defaulted both arguments. Cloud asserts that consideration is appropriate because the state courts refused an evidentiary hearing, but the brief does not feature, or even approach, a plenary default analysis. Last, and conclusively, the claims have no substantive merit. As discussed, state law indicates that the factual basis adequately supported Cloud's first degree robbery conviction, even if he did not directly engage in the "act of force or violence" that proximately caused the victim's injuries. Defense counsel's failure to review the physical injury component of the crime therefore could not have prejudiced Cloud.

## IV. Certificate of Appealability

A Certificate of Appealability may issue where a habeas petitioner has made a "substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). This requires a petitioner to demonstrate that "jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000). The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. *See* 28 U.S.C. § 2253(c)(3); *see also Murphy v. Ohio,* 263 F.3d 466, 467

(6th Cir.2001)(requiring an "individualized determination of each claim" in considering whether to grant a certificate of appealability).

■ Because of the dispositive prejudice issues, Cloud has not made a "substantial showing" as to any claimed denial of rights. Based on a clear record from the evidentiary hearing, the Court believes its determination on the merits is not debatable. Neither ineffective assistance claim presents a close issue, relative to prejudice, involving a violation or unreasonable application of clearly established federal law. The prejudice analysis or the uncommunicated plea offer logically clashes with the analysis on the parole eligibility issue, but Petitioner's unwavering sworn assertion undoubtedly compels the result reached. As such, Cloud is not entitled to a Certificate of Appealability.

## V. Recommendation

For all of the reasons stated in this decision, the Court **RECOMMENDS** that:

1) the District Court DENY, with prejudice, Cloud's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, *see* DE# 1; and

2) the District Court wholly refuse a Certificate of Appealability should Cloud request a COA.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of said statute. As defined by § 636(b)(1) and Fed.R.Civ.P. 72(b), within ten days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. The parties

---

**26.** The Court denies the imbedded motion to amend and/or motion to brief suggested by Cloud's post-hearing brief. Procedurally, any

such effort must comport with the applicable Rules, and the passing references do not.

should consult said statute and rule for appeal rights and mechanics.

March 17, 2008.